1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   ERIK RANDALL MILNER,                    Case Nos.  25-cv-03350-JSC
                                                        25-cv-03428-JSC
8              Plaintiff,

9         v.                               **ORDER RE: MOTIONS TO DISMISS**

10  DUSTIN DODD, et al.,                    Re: Case No. 3:25-cv-03350-JSC, Dkt. Nos.
                                            15, 22, 24, 60, 65;
11             Defendants.

12  ERIK RANDALL MILNER,                    Case No. 3:25-cv-03428-JSC, Dkt. Nos. 25,
                                            30, 37.
13             Plaintiff,

14        v.

15  NAPA EMERGENCY WOMEN'S
    SERVICES (NEWS), et al.,
16             Defendants.

17

18        In two cases, Erik Milner, proceeding in forma pauperis without attorney representation,

19  sues Napa County Child Welfare Services ("CWS"), Napa County Health & Human Services

20  ("HHSA"), the Napa Valley Police Department, the Napa County Probation Department ("Napa

21  Probation"), Napa Emergency Women's Services ("NEWS"), Aric Bright, Dustin Dodd, Jose

22  Velasquez, Martha Jimenez Ramirez, Matthew Lipscomb, Nick Toscani, and Pete Peirsig for

23  federal constitutional violations and violations of the Racketeer Influenced and Corrupt

24  Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968.  (Case No. 25-cv-03350-JSC, Dkt. No. 1;

25  Case No. 25-cv-03428-JSC, Dkt. No. 1.)[1]  Now pending before the Court are Defendants' motions

26

27  _____
    [1] Record citations are to material in the Electronic Case File ("ECF") in Case No. 25-cv-03350-
    JSC, unless otherwise noted; pinpoint citations are to the ECF-generated page numbers at the top
28  of the documents.  Mr. Milner also filed a habeas petition in Case No. 25-cv-06193, and Ms.
    Dawson has brought similar claims against similar defendants in Case Nos. 25-cv-01923-JSC and

1    to dismiss Mr. Milner's original complaints, (Dkt. Nos. 15, 22, 24; Case No. 25-cv-03428-JSC,

2    Dkt. Nos. 25, 30), and strike his amended complaints, (Dkt. No. 60; Case No. 25-cv-03428-JSC,

3    Dkt. No. 37.)  Having carefully considered the parties' submissions, the Court determines oral

4    argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the December 18, 2025

5    hearing, and GRANTS Defendants' motions, dismisses Mr. Milner's initial complaints with leave

6    to amend, and strikes Mr. Milner's amended complaints.[2]

7        As to his 42 U.S.C. § 1983 claims, Mr. Milner does not include sufficient facts to plausibly

8    allege (1) any individual Defendant violated his Eighth, Fourteenth, or First Amendment rights;

9    (2) NEWS is a state actor; and (3) the local government Defendants had a municipal policy,

10   practice, or custom which was the moving force behind constitutional violations.  As to his RICO

11   claim, Mr. Milner has not plausibly alleged a pattern of racketeering activity, an injury to his

12   business or property, or each Defendant's role in the enterprise.

13                                    **BACKGROUND**

14   **I.      CASE NO. 3:25-CV-03350-JSC**

15        **A.      Complaint Allegations**

16        On August 31, 2023, Officers Dustin Dodd and Pete Peirsig left Mr. Milner locked in a

17   police car without air conditioning for over two hours and "ordered a forced blood draw" without

18   a signed warrant while he was unconscious.  (Dkt. No. 1 at 5, 7.)  Because three versions of a

19   warrant exist: one unsigned from August 31, 2023, one signed on September 5, 2023, and one

20   signed on September 19, 2023, "the Napa Police laundered warrants after illegal searches."  (*Id.* at

21   5.)  Karen Roberts witnessed the mistreatment and gave a statement, but Mr. Milner's lawyer

22   "never interviewed or called [her] to testify."  (*Id.*)  Later that day, Mr. Milner was placed in an

23   interview room while unconscious, ignored when he asked for a lawyer, and not given water or

24   medical help although he "was slumped over the desk for hours."  (*Id.* at 6.)

25        Meanwhile, Amanda Dawson was hospitalized for a "traumatic brain injury" and

26

27   _____

     3:25-cv-09369-JSC.

28   [2] The Court also GRANTS Mr. Milner's motion for leave to file an opposition to the motion to
     strike.  (Dkt. Nos. 65 (motion), 66 (opposition)).

United States District Court
Northern District of California

questioned by Officer Velazquez, and although she "did not consent to medical release" and was "administered fentanyl and morphine right before the interview," the officers "used her statements." (*Id.* at 6, 8.) On body camera footage, an officer said he "had an 'in' with hospital staff" and "mocked someone who had allegedly [b]een sexually assaulted," but "[t]his footage was not given to [Mr. Milner's] defense before trial." (*Id.* at 6.) The same day, Officers Toscani and Lipscomb entered Mr. Milner's residence and seized his truck without a warrant. (*Id.*)

On October 19, 2023, CWS employee Martha Jimenez, Officer Lipscomb, and Officer Toscani removed Mr. Milner's and Ms. Dawson's son without a warrant, despite Officer Lipscomb's prior statement they would not do so. (*Id.*) Because Mr. Milner and Ms. Dawson were "never convicted of any child-related crime," and "[p]rior claims were ruled unfounded," "CPS took [their] child with no emergency or new evidence" and "acted on fake and incomplete information." (*Id.* at 6, 8.)

On December 20, 2024, Mr. Milner's probation was "revoked without cause," "warning, hearing, or new violation." (*Id.* at 6.) On December 24, 2024, Mr. Milner filed a motion to vacate his sentence, and, the same day, a retaliatory warrant was issued . (*Id.*)

In addition, the nonprofit "NEWS, which receives federal funding under FVPSA and VAWA, falsely advertises that its services are voluntary," including on "federal grant documents." (*Id.* at 6, 9.) Ms. Ramirez and CWS "forced [Ms. Dawson] into NEWS programming" and "requir[ed] her to sign releases giving access to her medical and drug test info" "under threat of losing custody of [their] child." (*Id.* at 6, 10.) Mr. Milner "was not required to participate in NEWS programming, but [he] was still court-ordered to pay them money as part of [his] release conditions." (*Id.* at 6.)

Mr. Milner also alleges Defendants "[u]sed [a] fake search to cover up illegal actions," "tampered with" and hid body camera footage and other evidence, used Ms. Dawson's hospital statements, "file[d] false charges," "took [his] blood with no signed warrant," and "filed and filled out two other versions after the fact to justify it." (*Id.* at 8.) He was then "prosecuted using multiple fake warrant[s]." (*Id.* at 9.) In addition, Mr. Milner "was denied fair access to evidence," including Ms. Roberts's testimony. (*Id.* at 8.) His public defender Mr. Bright "did nothing to

United States District Court
Northern District of California

stop" the due process violations. (*Id.*) Mr. Milner ultimately "lost [his] child, [his] rights, [his] time, and any chance at a fair trial." (*Id.* at 9.)

Furthermore, "every time [Mr. Milner] filed something in court to fight [his] case like a motion in probation or motion for a sentence review they hit [him] with [something] new . . . usually within 24 to 72 hours of [] filing." (*Id.* at 12.) These were not "based on new violations," but instead "just retaliation to punish [him] for exercising [his] rights." (*Id.*) For example, Mr. Milner's probation was revoked, he lost access to his child, and he was "targeted for using the court system." (*Id.*)

### B.    Procedural History

On April 15, 2025, Mr. Milner sued Dustin Dodd, Pete Peirsig, Jose Valasquez, Nick Toscani, Martha Jimenez Ramirez, Aric Bright, Napa Probation, CWS, and NEWS for violations of his Eighth Amendment, Fourteenth Amendment, and First Amendment rights under 42 U.S.C. § 1983. (Dkt. No. 1.) CWS, Martha Jimenez Ramirez, and Napa Probation moved to dismiss, and then filed an amended motion also on behalf of Aric Bright. (Dkt. Nos. 14, 22.) The City of Napa, the Napa Police Department, Dustin Dodd, Pete Peirsig, Jose Velasquez, Matthew Lipscomb, and Nick Toscani also moved to dismiss and strike Mr. Milner's complaint or for a more definite statement. (Dkt. No. 15.) NEWS also filed a motion to dismiss. (Dkt. No. 24.)

Because Mr. Milner did not file a response to Defendants' motion to dismiss, the Court ordered him to show cause why the case should not be dismissed for failure to prosecute. (Dkt. No. 30.) Mr. Milner responded and filed an emergency petition for a writ of habeas corpus, a temporary restraining order, and a preliminary injunction. (Dkt. Nos. 31, 32.) The Court denied Mr. Milner's habeas petition because it sought release from detention, a form of relief not available in a section 1983 action. (Dkt. No. 42.) And, as Mr. Milner remained incarcerated, the Court extended his time to oppose the motions to dismiss. (Dkt. No. 55.)

Instead of filing an opposition, Mr. Milner filed an amended complaint against the City of Napa, Dustin Dodd, Pete Peirsig, Nicholas Toscani, Matthew Lipscomb, the Napa County District Attorney's Office, Aric Bright, CWS, and NEWS for violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983; conspiracy to commit fraud and falsify

United States District Court
Northern District of California

United States District Court
Northern District of California

1    judicial documents under 18 U.S.C. §§ 1341, 1343, and 1519; RICO; and the False Claims Act, 31

2    U.S.C. § 3729.  (Dkt. No. 56.)  CWS, Martha Jimenez Ramirez, and the Napa County District

3    Attorney's Office moved to dismiss or strike Mr. Milner's complaint.  (Dkt. No. 60.)  Mr. Milner

4    filed a sur-reply addressing the earlier motions to dismiss.  (Dkt. No. 61.)  He also sought leave to

5    file an opposition to Defendants' motion to dismiss or strike at Docket No. 60.  (Dkt. Nos. 65, 66.)

6    **II.    CASE NO. 3:25-CV-03428-JSC**

7        **A.    Complaint Allegations**

8        First, Mr. Milner alleges NEWS, CWS, HHSA, Napa Probation, and Martha Jimenez

9    Ramirez coerced Mr. Milner by "explicitly threatening Plaintiff and family members with loss of

10   child custody and reunification services unless they signed mandatory Release of Information

11   (ROI) forms."  (Case No. 25-cv-03428-JSC, Dkt. No. 1 at 3.)  Second, Defendants "repeatedly

12   misrepresented NEWS services as voluntary in publicly available communications while

13   simultaneously mandating participation and exchanging coercive communications via electronic

14   and postal means."  (*Id.*)  Third, "Defendants submitted false statements and misleading

15   information to Napa County Superior Court."  (*Id.*)  Fourth, "Defendants misused and

16   misrepresented federal and state funds . . . by fraudulently claiming voluntary client participation,

17   while simultaneously mandating participation under threats."  (*Id.* at 4.)

18       **B.    Procedural History**

19       On April 17, 2025, Mr. Milner sued NEWS, CWS, HHSA, Napa Probation, and Martha

20   Jimenez Ramirez under RICO.  (Case No. 25-cv-03428-JSC, Dkt. No. 1.)  Defendants moved to

21   dismiss.  (Case No. 25-cv-03428-JSC, Dkt. Nos. 25, 30.)  As Mr. Milner was incarcerated, the

22   Court twice extended his time to oppose the motions to dismiss.  (Case No. 25-cv-03428-JSC,

23   Dkt. Nos. 31, 33.)  Instead of opposing the pending motions, Mr. Milner filed an amended

24   complaint, adding Aric Bright, Dustin Dodd, Nicholas Toscani, Matthew Lipscomb, Pete Peirsig,

25   Jose Velasquez, the City of Napa, and the Napa Valley Police Department as defendants, and

26   asserting violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights under 42

27   U.S.C. § 1983; conspiracy to commit fraud and falsify judicial documents under 18 U.S.C. §§

28   1341, 1343, and 1519; RICO claims; and violations of the False Claims Act, 31 U.S.C. § 3729.

1    (Case No. 25-cv-03428-JSC, Dkt. No. 34.)[3]  CWS, HHSA, Napa Probation, and Martha Jimenez

2    Ramirez then moved to strike or dismiss Mr. Milner's amended complaint.  (Case No. 25-cv-

3    3428-JSC, Dkt. No. 37.)  Mr. Milner did not oppose this motion.

## DISCUSSION

### I.    MOTIONS TO STRIKE AMENDED COMPLAINTS

Under Federal Rule of Civil Procedure 15, a party "may amend its pleading once as a matter of course" within 21 days after service of a responsive pleading or Rule 12 motion.  Fed. R. Civ. P. 15(a)(1).  Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

County Defendants[4] move to strike Mr. Milner's amended complaints in both cases.  (Dkt. No. 60; Case No. 25-cv-03428-JSC, Dkt No. 37.)  County Defendants served their motions to dismiss on June 16, 2025 and September 12, 2025, respectively, and Mr. Milner filed his amended complaint on October 20, 2025—more than 21 days later.  (Dkt. Nos. 22, 56; Case No. 25-cv-03428-JSC, Dkt Nos. 30, 34.)  Mr. Milner also did not obtain Defendants' consent or the Court's leave before filing his amended complaint.

The Court therefore GRANTS County Defendants' motion to strike Mr. Milner's amended complaints.

### II.    MOTIONS TO DISMISS INITIAL COMPLAINTS

#### A.    Legal Standard

Under Federal Rule of Civil Procedure 8, a complaint must include a "short and plain statement of [each] claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While the Rule 8 pleading standard does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  On a motion to dismiss, the court "must take all of the factual

---

[3] This amended complaint is identical to the amended complaint filed at Case No. 25-cv-03350-JSC, Dkt. No. 56.

[4] In Case No. 25-cv-03350-JSC, County Defendants include Aric Bright, CWS, Martha Jimenez Ramirez, and the Napa County District Attorney's Office.  (Dkt. No. 60.)  In Case No. 25-cv-03428-JSC, County Defendants include CWS, HHSA, Napa Probation, and Martha Jimenez Ramirez.  (Dkt. No. 37.)

United States District Court
Northern District of California

allegations in the complaint as true." *Id.* However, this presumption does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Ultimately, to avoid dismissal, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," in other words, to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). When a plaintiff files a complaint without representation by a lawyer, the Court must "construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quotation marks and citation omitted).

## B.   Section 1983 Claims

"42 U.S.C. § 1983 creates a cause of action against a person who, acting under color of state law, deprives another of rights guaranteed under the Constitution." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by government officials." *Id.* To state a Section 1983 claim, a plaintiff must allege a government official (1) acted "under color of state law," and (2) "the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.* (quotation marks and citation omitted).

In addition, "[i]n order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Id.* Therefore, a plaintiff must allege a specific government official's actions caused his injuries. *See White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990); *see also Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1998) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). As an initial matter, all of Mr. Milner's constitutional claims are insufficiently pled because he does not identify which Defendants took each specific action to violate his constitutional rights.

### 1.   Eighth Amendment Cruel and Unusual Punishment Claim

Mr. Milner sues Mr. Dodd, Mr. Peirsig, Mr. Toscani, Napa, the Napa Police Department, and Napa Probation for violating his Eighth Amendment right to be free from cruel and unusual

United States District Court
Northern District of California

7

punishment based on his treatment on August 31, 2023.  (Dkt. No. 1 at 7.)

"[T]he Eighth Amendment's protections [do] not attach until after conviction and sentence."  *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989).  "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."  *Id.* (quotation marks and citations omitted).  So, "[c]onditions of confinement claims raised by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment."  *Veaver v. Honea*, No. 2:20-CV-02554-CKD P, 2021 WL 369438, at *3 (E.D. Cal. Feb. 3, 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)).

Mr. Milner alleges Defendants locked him in a patrol car "for over two hours with no air conditioning," did not provide water or medical help, left him unconscious in an interview room for 2.5 hours, and "forcibly" drew his blood.  (Dkt. No. 1 at 7.)  However, Mr. Milner does not allege Defendants' actions took place after he was convicted of a crime and sentenced to prison, which is necessary to plead an Eighth Amendment cruel and unusual punishment claim.  To the extent Mr. Milner challenges conditions of confinement which occurred before his criminal trial, he must instead bring a Fourteenth Amendment Due Process Clause claim.

So, the Court dismisses Mr. Milner's Eighth Amendment claim with leave to amend.

### 2. Fourteenth Amendment Due Process Claim: False Evidence and Improper Legal Procedure

Next, Mr. Milner sues Mr. Dodd, Mr. Peirsig, Mr. Toscani, Napa, the Napa Police Department, Napa Probation, Mr. Lipscomb, Ms. Ramirez, and Mr. Bright for violating his Fourteenth Amendment rights by falsifying evidence, using a "fake search to cover up illegal actions," improperly using statements from Ms. Dawson, filing false charges, and taking his blood without a warrant.  (Dkt. No. 1 at 8.)  He also claims he was denied "proper legal procedure" and "fair access to evidence," including when Defendants blocked Ms. Roberts from testifying and "acted on fake and incomplete information to remove [his] child."  (*Id.*)  And he alleges Mr. Bright "did nothing to stop this whole system treating [him] like [he] was guilty before trial punished [him]."  (*Id.*)

United States District Court
Northern District of California

1    There is a Fourteenth Amendment "due process right not to be subjected to criminal

2    charges on the basis of false evidence that was deliberately fabricated by the government."

3    *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc).  "To prevail on a § 1983

4    claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately

5    fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."

6    *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citation omitted).  "To establish the second

7    element of causation, the plaintiff must show that (a) the act was the cause in fact of the

8    deprivation of liberty, meaning that the injury would not have occurred in the absence of the

9    conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the

10    injury is of a type that the reasonable person would see as a likely result of the conduct in

11    question."  *Id.* (citation omitted).

12    Mr. Milner has not plausibly alleged a fabricated evidence claim because he has not

13    identified the deprivation of liberty which occurred—perhaps a criminal sentence or the loss of his

14    child—and included facts from which the Court can infer Defendants' actions caused such

15    deprivation of liberty.  And, to the extent Mr. Milner challenges the legal process, he must allege a

16    particular legal proceeding in which he was denied legal process.  Mr. Milner's complaint also

17    fails to specify which Defendants fabricated particular pieces of evidence or followed improper

18    legal processes.

19    As to Mr. Milner's claim against Mr. Bright, Mr. Milner has not plausibly alleged Mr.

20    Bright specifically acted to violate his constitutional rights, as opposed to failing to stop others'

21    constitutional violations.  Furthermore, "a public defender does not act under color of state law

22    when performing a lawyer's traditional functions as counsel to a defendant in a criminal

23    proceeding."  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981).  So, Mr. Milner cannot state

24    a Fourteenth Amendment claim against Mr. Bright.

25    So, the Court dismisses Mr. Milner's Fourteenth Amendment claim based on false

26    evidence and improper legal procedures with leave to amend, except as to the claim against Mr.

27    Bright which is dismissed without leave to amend.

28

United States District Court
Northern District of California

9

### 3.    Fourteenth Amendment Right to Privacy Claim

Mr. Milner sues Ms. Ramirez, CWS, NEWS, Napa Probation, Mr. Dodd, Mr. Peirsig, Mr. Toscani, and Mr. Lipscomb for violating his Fourteenth Amendment right to privacy including by collecting his blood and seizing his truck without a warrant and using Ms. Dawson's statements in the hospital and NEWS documents.  (Dkt. No. 1 at 9.)

"While there is no generalized right to privacy, the Supreme Court has recognized a privacy right against certain kinds of governmental intrusions under the Due Process Clause of the Fourteenth Amendment."  *Parents for Privacy v. Dallas Sch. Dist. No. 2*, 326 F. Supp. 3d 1075, 1092 (D. Or. 2018).  However, the Fourteenth Amendment's Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quotation marks and citation omitted).  So, a plaintiff must include a "careful description of the asserted fundamental liberty interest."  *Id.* at 721 (quotation marks and citation omitted).

Mr. Milner has not alleged enough facts explaining the type of liberty interest affected for the Court to infer that liberty interest is protected by the Fourteenth Amendment's Due Process Clause.  To the extent Mr. Milner seeks to challenge police officers' searches as unreasonable, he may instead be able to plead a Fourth Amendment claim.  *See Deryan v. Glover*, No. 2:23-CV-000063-MKD, 2023 WL 6120908, at *4 (W.D. Wash. Sept. 18, 2023) ("The Fourth Amendment, [however], provides a right to privacy, including a right to be free from unreasonable governmental searches.").

In addition, to the extent Mr. Milner alleges Defendants violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), "HIPAA itself provides no private right of action" under which he may sue.  *See Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007).

So, the Court dismisses Mr. Milner's Fourteenth Amendment privacy claim with leave to amend.

### 4.    Fourteenth Amendment Family Integrity Claim

Mr. Milner next sues Ms. Ramirez, CWS, NEWS, and Mr. Lipscomb for violating his Fourteenth Amendment rights to "family integrity and fair process," including by forcing Ms. Dawson "into federally funded programs by threatening to take [their] child." (Dkt. No. 1 at 10.)

"The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (quotation marks and citation omitted). "Officials violate this right if they remove a child from the home absent information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Id.* (quotation marks and citation omitted).

Mr. Milner alleges "CPS took [his] child with no emergency or new evidence." (Dkt. No. 1 at 6.) However, to support his claim there was "no emergency" or "evidence," Mr. Milner only states he and Ms. Dawson were "never convicted of any child-related crime" and "[p]rior claims were ruled unfounded." (*Id.*) These facts are not sufficient to plausibly allege Defendants lacked reasonable cause to remove his child and therefore violated the Fourteenth Amendment. Mr. Milner also cannot bring a Fourteenth Amendment claim based only on officials' threats to remove his child.

In addition, to the extent Mr. Milner seeks to assert claims under the Family Violence Prevention Services Act, 42 U.S.C. § 10408, or the False Claims Act, 31 U.S.C. § 3729, he may not do so. *See Thompson v. Washington*, No. C04-2554L, 2005 WL 2045886, at *2 (W.D. Wash. Aug. 25, 2005) ("[T]he Family Violence Prevention Services Act contains no private right of action."); *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1127 (9th Cir. 2007) ("The FCA [] does not authorize a [plaintiff] to prosecute a § 3729 violation *pro se*.")

So, the Court dismisses Mr. Milner's Fourteenth Amendment family integrity claim with leave to amend.

### 5.    First Amendment Retaliation Claim

Mr. Milner also sues the Napa Police Department, Napa Probation, Mr. Dodd, and Mr.

Toscani for retaliation in violation of his First Amendment rights.  (Dkt. No. 1 at 12.)

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."  *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quotation marks and citation omitted).  A plaintiff must allege an official "acted with a retaliatory motive" to cause a plaintiff's injury, meaning "the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Id.* at 398-99.  A plaintiff must therefore plead the absence of probable cause or non-retaliatory motives for an official's actions.  *See Hartman v. Moore*, 547 U.S. 250, 265-66 (2006).

Mr. Milner alleges every time he filed a motion for probation or sentence review, there was "retaliation to punish [him] for exercising [his] rights."  (Dkt. No. 1 at 12.)  However, he has not specified when he exercised a right, what right he exercised, and how each particular Defendant retaliated against him.  Furthermore, although he alleges a retaliatory warrant was issued after he filed a motion to vacate his sentence, (Dkt. No. 1 at 6), he does not identify which Defendant issued the warrant.  And, he has not included facts which support a plausible inference the individual Defendants who retaliated against him had no probable cause for the actions they took and instead acted with retaliatory motive.

So, the Court dismisses Mr. Milner's First Amendment retaliation claim with leave to amend.

### 6.     Claims Against NEWS

NEWS moves to dismiss all claims against it because it is a nonprofit and not a state actor.

To state a federal constitutional claim, a plaintiff must allege facts which show a deprivation by a person acting under color of state law.  *See Brentwood Academy v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295 (2001).  Generally, private parties do not act under color of state law.  *See id.*; *see also Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746-47 (9th Cir. 2003) ("The United States Constitution protects individual rights only from *government* action, not from *private* action.  Only when the *government* is responsible for a plaintiff's complaints are individual constitutional rights implicated.").  Courts consider three factors in deciding whether private parties act under color of state law.  *See Jackson v. East Bay*

12

*Hosp.*, 980 F. Supp. 1341, 1356 (N.D. Cal. 1997) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004-12 (1982)).  First, there must be a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself." *Blum*, 457 U.S. at 1004 (quotation marks and citation omitted).  Second, the nexus must be such that the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (citations omitted).  Third, the entity must have exercised powers "that are traditionally the exclusive prerogative of the State." *Id.* at 1005 (quotation marks and citation omitted).

Mr. Milner's allegations NEWS "receives federal funding" are insufficient to show NEWS is a state actor.  (Dkt. No. 1 at 6.)  *See Jackson*, 980 F. Supp. at 1357 ("Extensive case law establishes that a private doctor or hospital cannot be deemed a state actor merely because they are recipients of state or federal funding.").  His allegations CWS "forced" Ms. Dawson "into NEWS programming," and a court "ordered [him] to pay them money as part of [his] release conditions" are also insufficient to plausibly allege NEWS is a state actor.  (Dkt. No. 1 at 6.)  *See Pasadena Republican Club v. Western Justice Ctr.*, 985 F.3d 1161, 1170 (9th Cir. 2021) ("[M]erely contracting with the government does not transform an otherwise private party into a state actor.").

So, the Court dismisses Mr. Milner's constitutional claims against NEWS because Mr. Milner has not plausibly alleged NEWS is a state actor.  However, the Court gives Mr. Milner leave to amend because NEWS has not shown it is impossible for Mr. Milner to allege it is a state actor.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### 7.        Claims Against Local Governments

CWS, Napa Probation, the City of Napa, the Napa Police Department, and NEWS also seek to dismiss Mr. Milner's claims against them because, to the extent they are local governments, Mr. Milner has not sufficiently alleged a *Monell* claim.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts

United States District Court
Northern District of California

United States District Court
Northern District of California

1  the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc.*

2  *Servs. of City of New York,* 436 U.S. 658, 694 (1978).  To state a *Monell* claim, a plaintiff must

3  first show his constitutional rights were violated by an individual defendant who was a local

4  government employee. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("If a person

5  has suffered no constitutional injury at the hands of the individual police officer, the fact that the

6  departmental regulations might have *authorized* the use of constitutionally excessive force is quite

7  beside the point.")  Because as explained above, Mr. Milner has not alleged any individual officer

8  violated his constitutional rights, his constitutional claims against local government Defendants

9  also fail.

10      However, a plaintiff must also "establish that the local government had a deliberate policy,

11  custom, or practice that was the moving force behind the constitutional violation [he] suffered."

12  *AE ex rel. Hernandez v. Cnty. of Tulare,* 666 F.3d 631, 636 (9th Cir. 2012) (cleaned up).

13  "[G]enerally, a single instance of unlawful conduct is insufficient to state a claim for municipal

14  liability," but it may be sufficient "where fault and causation were clearly traceable to a

15  municipality's legislative body or some other authorized decisionmaker." *Benavidez v. Cnty. of*

16  *San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021) (cleaned up).  Although Mr. Milner alleges

17  Eighth, Fourteenth, and First Amendment claims against several governmental entities, he has not

18  identified a particular Napa County or Napa City policy, custom, or practice and explained how it

19  led to the constitutional violations.

20      So, local government Defendants' motions to dismiss claims against them are granted with

21  leave to amend.

22      **C.    RICO Claim**

23      A civil claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18

24  U.S.C. §§ 1961-1968, must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of

25  racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or

26  property.'" *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th

27  Cir. 2005) (quotation marks and citation omitted).  "To conduct or participate directly or indirectly

28  in the conduct of such an enterprise, one must participate in the operation or management of the

1    enterprise." *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 912 (E.D. Cal. 2006) (cleaned up;

2    quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).  And, to show a pattern of

3    racketeering activity, a plaintiff must show "the racketeering predicates are related, *and* that they

4    amount to or pose a threat of continued criminal activity."  *Sever v. Alaska Pulp Corp.*, 978 F.2d

5    1529, 1535 (9th Cir. 1992) (cleaned up).  Furthermore, a plaintiff must allege a "racketeering

6    activity" as defined by 18 U.S.C. § 1961(1), which includes:

> "[A]ny act or threat involving murder, kidnapping, gambling, arson,
> robbery, bribery, extortion, dealing in obscene matter, or dealing in a
> controlled substance or listed chemical (as defined in Section 102 of
> the Controlled Substances Act), which is chargeable under State Law
> and punishable by imprisonment for more than one year." §
> 1961(1)(A). Also included are any of more than twenty types of
> conduct indictable under enumerated provisions of the United States
> Code, ranging from mail fraud and wire fraud, through robbery and
> extortion, to white slave trade. § 1961(1)(B). Finally, a "predicate act"
> may also be established by any offense involving fraud "connected
> with" a bankruptcy case, "fraud in the sale of securities," or any act
> related to a controlled substance or listed chemical "punishable' under
> federal law." § 1961(1)(C).

14   *See Flores*, 416 F. Supp. 2d at 911.  In addition, "[t]o demonstrate injury for RICO purposes,

15   plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible

16   property interest."  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) ("Personal injuries are not

17   compensable under RICO.").

18           Mr. Milner has not plausibly alleged a RICO claim against NEWS, CWS, HHSA, Napa

19   Probation, and Ms. Ramirez.  As predicate acts, Mr. Milner alleges Extortion and Coercion, Mail

20   and Wire Fraud, Fraud on the Court, and Federal Grant Fraud.  (Case No. 25-cv-03428-JSC, Dkt.

21   No. 1 at 3-4.)  As to all four activities, Mr. Milner alleges "[t]hese predicate acts occurred

22   repeatedly (more than twice within ten years)."  (*Id.* at 4.)  However, he needs to also allege the

23   acts were related because they had "the same or similar purposes, results, participants, victims, or

24   methods of commission, or otherwise are interrelated by distinguishing characteristics and are not

25   isolated events."  *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (quoting 18 U.S.C. §

26   3575(e)); *see also Sever*, 978 F.2d at 1535 (requiring "the racketeering predicate[] [acts] [be]

27   related, *and* that they amount to or pose a threat of continued criminal activity").  Mr. Milner's

28   RICO claim also fails because he does not allege any facts supporting his claim he suffered

"financial harm," and so has not alleged an injury under RICO.  (Case No. 25-cv-03428-JSC, Dkt. No. 1 at 4.)  *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of [RICO] . . . may sue."); *see also Ove*, 264 F.3d at 825 (requiring "proof of concrete financial loss").  And, rather than allege "Defendants" violated RICO, Mr. Milner must identify the specific individuals who were involved in the enterprise and explain how each of them was involved.  (Case No. 25-cv-03428-JSC, Dkt. No. 1 at 3-4.)  *See Franco v. City & Cnty. of San Francisco*, No. C 10-04768 WHA, 2012 WL 1980799, at *10 (N.D. Cal. June 1, 2012) ("A plaintiff is required under RICO to allege for each particular defendant the specific 'racketeering activity' committed by the defendant." (citation omitted)).

As claims grounded in fraud, Mr. Milner's claims of Mail and Wire Fraud, Fraud on the Court, and Federal Grant Fraud must be pled with particularity.  Under Federal Rule of Civil Procedure 9(b), a plaintiff must allege claims "grounded in fraud" with particularity.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also Schreiber Distrib. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (applying Rule 9(b) particularity requirements to RICO claims).  Particularity requires specifying "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (cleaned up).  Mr. Milner only alleges "Defendants" "misrepresented" NEWS services or federal and state funds, or "submitted false statements and misleading information."  (Case No. 25-cv-03428-JSC, Dkt. No. 1 at 3-4.)  He does not specify which Defendants made what statements, at what time, and why those statements were false or misleading.  So, he has not pled the Mail and Wire Fraud, Fraud on the Court, and Federal Grant Fraud predicate acts with the necessary particularity.

So, Mr. Milner's RICO claim is dismissed with leave to amend.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motions to dismiss all of Mr. Milner's claims in his initial complaints with leave to amend, except Mr. Milner's Fourteenth Amendment claim based on false evidence and improper legal procedures is dismissed without

United States District Court
Northern District of California

16

leave to amend as to Mr. Bright.  Mr. Bright is not considered a state actor so Mr. Milner may not make constitutional claims against him.  The Court also GRANTS Defendants' motion to strike Mr. Milner's amended complaint.

Several Defendants move in the alternative for a more definite statement of Mr. Milner's pleading.  (Dkt. No. 15.)  *See* Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.").  Because the Court has granted Defendants' motions to dismiss, it DENIES this motion.  However, if Mr. Milner files an amended complaint, he must specify each legal claim he asserts, the facts supporting each claim, and the exact defendants against which he asserts each claim.

Mr. Milner may file a single amended complaint in Case No. 25-cv-03350-JSC consistent with this Order.  Mr. Milner should include all claims and defendants from both his cases that he wishes to pursue in that complaint and should not file an amended complaint in Case No. 25-cv-03428-JSC.  Mr. Milner's deadline to file an amended complaint is **January 17, 2026**.  If he does not file an amended complaint by that date, judgment will be entered in Defendants' favor and against Mr. Milner on all claims.

Finally, as Mr. Milner is proceeding without counsel, the Court directs his attention to the Handbook for Pro Se Litigants, which is available along with further information for the parties on the Court's website located at http://cand.uscourts.gov/proselitigants.  Mr. Milner may also contact the Legal Help Center via telephone: (415)-782-8982, or email: fedpro@sfbar.org for free assistance regarding his claims.

This Order disposes of Docket Nos. 15, 22, 24, 60, and 65 in Case No. 3:25-cv-03350-JSC, and Docket Nos. 25, 30, 37 in Case No. 3:25-cv-03428-JSC.

**IT IS SO ORDERED.**

Dated: December 12, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

17